UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN HARRY GEBHARDT,           :
                               :CIVIL ACTION NO. 3:15-CV-1724
          Plaintiff,           :
                               :(JUDGE CONABOY)
          v.                   :
                               :
CAROLYN W. COLVIN,             :
Acting Commissioner of         :
Social Security,               :
                               :
          Defendant.           :
                               :
_____

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (Doc. 1.)  He alleged disability beginning on January 10, 2011.  (R. 12.)  The Administrative Law Judge ("ALJ") who evaluated the claim, Jarrod Tranguch, concluded in his May 20, 2014, decision that Plaintiff's severe impairments of coronary artery disease and chronic obstructive pulmonary disease ("COPD") did not alone or in combination meet or equal a listed impairment.  (R. 18.)  He also found that Plaintiff was capable of medium work with certain nonexertional limitations and that he was capable of performing his past relevant work.  (R. 18-23.)  ALJ Tranguch therefore found Plaintiff was not disabled under the Act from January 10, 2011, through the date of the decision.  (R. 23.)

With this action, Plaintiff asserts that the ALJ erred for the following reasons: 1) the ALJ failed to address Plaintiff's obesity and make a finding whether it is "medically determinable" or "severe" (Doc. 15 at 4); 2) the ALJ's credibility evaluation did not take Plaintiff's work history into account (*id.* at 10); and 3) in his RFC determination, the ALJ did not take into account Plaintiff's ability to perform activities when his obesity is considered (*id.* at 12).  After careful consideration of the administrative record and the parties' filings, I conclude this appeal is properly denied.

## I. Background

### A.   *Procedural Background*

Plaintiff protectively filed for DIB on July 23, 2012.  (R. 12.)  He protectively filed for SSI on July 31, 2012.  (*Id.*)  The claims were initially denied on January 3, 2013, and Plaintiff filed a request for a hearing before an ALJ on February 19, 2013. (*Id.*)

ALJ Tranguch held a hearing on March 17, 2014.  (*Id.*) Plaintiff, who was represented by an attorney at the hearing, testified as did vocational expert ("VE") Carmine Abraham.  (*Id.*) As noted above, the ALJ issued his unfavorable decision on May 20, 2014, finding that Plaintiff was not disabled under the Social Security Act during the relevant time period.  (R. 23-24.)

On June 19, 2014, Plaintiff filed a Request for Review with

2

the Appeals Council.  (R. 7-8.)  The Appeals Council denied
Plaintiff's request for review of the ALJ's decision on July 9,
2015. (R. 1-6.)  In doing so, the ALJ's decision became the
decision of the Acting Commissioner.  (R. 1.)

On September 2, 2015, Plaintiff filed his action in this Court
appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant
filed her answer and the Social Security Administration transcript
on November 6, 2015.  (Docs. 11, 12.)  Plaintiff filed his
supporting brief on January 11, 2016.  (Doc. 15).  Defendant filed
her brief on February 16, 2016.  (Doc. 10.)  Plaintiff filed his
reply brief on March 1, 2016.  (Doc. 17.)  Therefore, this matter
is fully briefed and ripe for disposition.

## B.    *Factual Background*

Plaintiff was born on November 1, 2015 (R. 59); he was sixty-
two years old at the time of the ALJ decision (Doc. 15 at 13).  He
had past relevant work as a lead order filler.  (R. 22.)

## 1.    **Impairment Evidence**

Plaintiff's claimed errors relate to his alleged obesity and
his credibility.  (*See* Doc. 15 at 4-14.)  Therefore, I will provide
an overview of Plaintiff's physical condition and focus on specific
evidence relating to obesity.

a.    *Summary of Impairments*

In his November 26, 2012, Disability Evaluation, Vincent A.
Drapiewski, M.D., provided a detailed history of Plaintiff's

3

impairments which I summarize here.  (R. 476-78.)  Plaintiff
presented with a complaint of "heart attack" two years before.  (R.
476.)  At the time Plaintiff had cardiac catheterization but did
not require either angioplasty or stenting.  (*Id.*)  Dr. Drapiewski
recorded that there was an indication that Plaintiff had a
bilateral deep vein thrombosis with pulmonary embolization for
which he was placed on Coumadin.  (R. 476-77.)  He had continued to
take the Coumadin until two months before the evaluation.  (R.
477.)  Plaintiff also previously had grade two carcinoma of the
bladder.  (*Id.*)  Plaintiff had been placed on antidepressants by
his family physician but he did not have any psychiatric or
psychological consultation.  (*Id.*)  Plaintiff indicated that he had
"difficulty walking" but could not elaborate further on the
problem.  (*Id.*)  Dr. Drapiewski noted that "[i]t would appear that
he definitely does not have intermittent claudication."[1]  (*Id.*)
Dr. Drapiewski added that

> [h]e never develops lower extremity pain in a
> predictable fashion at a predictable rate,
> speed or distance.  The claimant also denied
> exertional or resting chest pain, orthopnea
> or paroxysmal nocturnal dyspnea.  He did
> indicate that he has "slight pain."  This,
> however, appeared to be spontaneous and
> cannot be related to any activity.  It
> appears to occur at a random fashion, but he

---

[1]  "Claudication is pain caused by too little blood flow,
usually during exercise.  Sometimes called intermittent
claudication, this condition generally affects the blood vessels in
the legs."  http://mayoclinic.org/diseases-
conditions/claudication/basics/definition/con-200335.

4

> definitely does not develop chest pain with
> walking, ascending stairs, or exposure to
> inclement or cold weather.

(R. 477.)

At the time of the examination, Plaintiff was not using any medications. (*Id.*) Dr. Drapiewski noted that Plaintiff was formerly employed as a warehouse foreman and had not worked since his illness two years earlier, adding that Plaintiff stated he was "let go" which he believed to be a result of downsizing. (R. 477-78.)

Physical examination included the following findings: neurological assessment revealed that Plaintiff had a normal affect; gait was normal in every respect; Plaintiff was able to squat and touch his toes without difficulty; he had unlimited range of motion in his upper and lower extremities; lungs were clear to percussion and ascultation; Plaintiff's heart had normal rhythm with no murmurs, and no atrial or ventricular gallops present; Plaintiff's blood pressure was 120/60; Plaintiff weighed 235 pounds; and he had no peripheral edema and no joint abnormalities. (R. 478.)

Dr. Drapiewski provided the following conclusion:

> The claimant provides a history that would
> indicate that he had an "MI" two years ago on
> the basis of available information; the
> inferior wall was implicated. He had cardiac
> catheterization, which showed no significant
> stenotic lesion. He does have a verified
> carcinoma of the bladder. It would appear
> that the prognosis is uncertain. He does

5

> have a history of bilateral [deep vein thrombosis], complicated with pulmonary embolization.  There were no laboratory results available.  Information accompanying the claimant indicated that he does have evidence of chronic renal failure and also a history of anemia.

(R. 478-79.)

b. *Obesity*

Plaintiff refers to the State agency medical reviewer's analysis and records from Plaintiff's primary care physician in support of the claimed error regarding obesity.[2]  (Doc. 15 at 6, 9 (citing R. 107, 396).)

Office notes dated August 13, 2011, from Plaintiff's primary care physician, David Rolston, M.D., indicated that Plaintiff requested a note that he be granted disability and that medications are a necessity for him.  (R. 395.)  Dr. Rolston noted that Plaintiff had a history of bladder cancer and Plaintiff reported his urologist told him there was no current problem or tumor. (*Id.*)  At the time of the visit Plaintiff was taking Flomax and proscar for unclear reasons (Plaintiff thought it was given to him after gallbladder surgery).  (*Id.*)  Dr. Rolston additionally noted that Plaintiff had no symptoms associated with his hypertension or chronic kidney disease and he regularly goes to the anticoagulation clinic regarding his pulmonary embolization.  (R. 395.)  His review

---

[2]  Although Plaintiff refers to obesity being "well-documented" as shown in the "medical records" (Doc. 15 at 4-5), he points to only these two records.

of symptoms was otherwise negative.  (R. 395-96.)  Physical
examination showed no problems and included the notation that
Plaintiff's lungs were clear.  (R. 396.)  Dr. Rolston's diagnosis
included obesity, and he noted that Plaintiff--who was 5'9' tall,
weighed 221 pounds, and had a BMI of 32.72--was counseled about
this.  (R. 396, 397.)  He reported that he told Plaintiff he could
not sign the disability form "as technically he can do work--do [a]
desk job for instance[.] I did sign his medication necessity form."
(R. 396.)

In the RFC assessment completed by Minda Bermudez, M.D., on
January 2, 2013, Plaintiff was found to have some exertional,
postural and environmental limitations, and the diagnoses include
"Obesity-severe."[3] (R. 109-11.)  The assessment contains no other
discussion of or reference to obesity.  (*See* R. 109-13.)

2.    **Hearing Testimony**

Although not specifically alleging a relationship with
obesity, Plaintiff maintains his testimony supports Dr. Rolston's
statement regarding Plaintiff being able to perform a desk job, a
statement Plaintiff equates with an opinion that he would be
limited to sedentary work.  (Doc. 15 at 9.)

Plaintiff testified at the March 17, 2014, hearing that he was

---

[3]   Plaintiff refers specifically to the obesity determination
made be Dr. Bermudez citing page 107 of the record.  (Doc. 15 at
6.)  The cited page contains the severity assessment of John Rohar,
Ph.D. (R. 107-08.)  Dr. Bermudez's obesity assessment is found on
page 111 of the record.

5' 11" tall and weighed 280 pounds.  (R. 59.)  He said there had been no significant change in his weight over the previous several years.  (*Id.*)

Plaintiff said he was laid off in January 2011 without being given a specific reason but he thought it was due to downsizing. (R. 64.)  He stated that he collected unemployment compensation "for the first year, six months" after he stopped working. (R. 61-62.)  He acknowledged that meant he was certifying he was able and available to work and there was a discrepancy between that and his disability application where he was saying he was not able to work. (R. 62-63.)

When asked to explain what caused him to file an application for disability benefits, he responded as follows:

> Well, I had a heart attack.  I fell down the stairs.  When I got to the hospital the day I was being released they told me that they also found cancer.  Then they told me I had a heart attack.  I wasn't initially informed of that when I first went in but they kept me in intensive care for a week and I have blood clots which cause my legs to swell and my feet to swell.  I can't be on them for any long period of time.  I have stage three kidney problems.  I get dizzy.  I can't, I feel like I'm off balance all the time.  I wind up falling.  I have an injury from when I was five years old that my knee caps at the center I have no protection and when I fall on this it cuts it open and what the doctors are telling me now, because of my age it takes a lot longer to heal so I have to be, I try to be careful but I can't prevent from falling and then I still get dizzy, I mean, the list goes on.

8

(R. 64-65.)  When asked to provide details about these conditions or symptoms, Plaintiff had a difficult time doing so.  (R. 65-72.) He talked at length about being dizzy and feeling off balance and falling as a result, adding that he had fallen two weeks earlier but he did not seek medical attention.  (R. 66-68.)  Plaintiff also testified that he can't walk very far because he gets out of breath and his legs swell if he stands for too long.  (R. 73.)  He did not know if he was on any medications for the swelling.  (*Id.*)

### 3.   **ALJ Decision**

ALJ Tranguch issued his decision on May 20, 2014, considering evidence submitted up to that date.  (R. 14-26.)  He made the following Findings of Fact and Conclusions of Law:

> 1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2.   The claimant has not engaged in substantial gainful activity since January 10, 2011, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3.   The claimant has the following severe impairments: coronary artery disease and chronic obstructive pulmonary disease (COPD)(20 CFR 404.1520(c) and 416.920(c)).
>
> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P. Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the
     entire record, the undersigned finds
     that the clamant has the residual
     functional capacity to perform medium
     work as defined in 20 CFR 404.1567(c)
     and 416.967(c) in that the claimant
     could lift and carry fifty pounds
     occasionally and twenty-five pounds
     frequently, stand or walk for six hours
     in an eight-hour workday and sit for six
     hours in an eight-hour workday.  The
     claimant could perform frequent
     balancing, stooping, kneeling,
     crouching, crawling, climbing ramps and
     using stairs.  The claimant must avoid
     occupations that require climbing
     ladders, ropes or scaffolds.  The
     claimant must avoid concentrated
     exposure to potential pulmonary or
     respiratory irritants such as fumes,
     odors, dust, gases and work environments
     with poor ventilation.  The claimant
     must avoid concentrated exposure to
     workplace hazards such as unprotected
     heights and dangerous moving machinery.
     The claimant must avoid concentrated
     exposure to extreme cold temperatures.

6.   The claimant is capable of performing
     past relevant work as a lead order
     filler.  This work does not require the
     performance of work-related activities
     precluded by the claimant's residual
     functional capacity (20 CFR 404.1565 and
     416.965).

7.   The claimant has not been under a
     disability, as defined in the Social
     Security Act from January 10, 2011,
     through the date of this decision (20
     CFR 404.1520(f) and 416.920(f).

(R. 14-23.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to

determine whether a claimant is disabled.[4]  It is necessary for the
Commissioner to ascertain: 1) whether the applicant is engaged in a
substantial activity; 2) whether the applicant is severely
impaired; 3) whether the impairment matches or is equal to the
requirements of one of the listed impairments, whereby he qualifies
for benefits without further inquiry; 4) whether the claimant can
perform his past work; 5) whether the claimant's impairment
together with his age, education, and past work experiences
preclude him from doing any other sort of work.  20 C.F.R. §§
404.1520(b)-(g), 416.920(b)-(g); see Sullivan v. Zebley, 493 U.S.
521, 110 S. Ct. 885, 888-89 (1990).

   If the impairments do not meet or equal a listed impairment,
the ALJ makes a finding about the claimant's residual functional

---

[4]  "Disability" is defined as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less that 12 months . . . ."  42 U.S.C.
§ 423(d)(1)(A).  The Act further provides that an individual is
disabled

> only if his physical or mental impairment or
> impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of
> substantial gainful work which exists in the
> national economy, regardless of whether such
> work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists
> for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A).

capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step four of the sequential evaluation process when the ALJ found that Plaintiff could perform his past relevant work as a lead order filler.  (R. 22.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see*

12

*also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must

13

not only state the evidence considered which supports the result
but also indicate what evidence was rejected: "Since it is apparent
that the ALJ cannot reject evidence for no reason or the wrong
reason, an explanation from the ALJ of the reason why probative
evidence has been rejected is required so that a reviewing court
can determine whether the reasons for rejection were improper."
*Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an
exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v.
Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement
that the ALJ discuss in its opinion every tidbit of evidence
included in the record."  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d
Cir. 2004).  "[W]here [a reviewing court] can determine that there
is substantial evidence supporting the Commissioner's decision, . .
.  the *Cotter* doctrine is not implicated."  *Hernandez v.
Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir.
2004) (not precedential).

   A reviewing court may not set aside the Commissioner's final
decision if it is supported by substantial evidence, even if the
court would have reached different factual conclusions.  *Hartranft*,
181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d
1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings
of the Commissioner of Social Security as to any fact, if supported
by substantial evidence, shall be conclusive . . .").  "However,
even if the Secretary's factual findings are supported by

substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).   Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless.   *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review.").   An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

### IV. Discussion

Plaintiff alleges that the ALJ erred for the following reasons: 1) the ALJ failed to address Plaintiff's obesity and make a finding whether it is "medically determinable" or "severe" (Doc. 15 at 4); 2) the ALJ's credibility evaluation did not take Plaintiff's work history into account (*id.* at 10); and 3) in his RFC determination, the ALJ did not take into account Plaintiff's ability to perform activities when his obesity is considered (*id.* at 12).

15

**A.    *Step Two Evaluation***

Plaintiff's assertion that the ALJ failed to make a finding whether his obesity is "medically determinable" or "severe" is a criticism of the ALJ's step two analysis.  Specifically, Plaintiff asserts that the ALJ erred as a matter of law when he made no findings about Plaintiff's obesity in that the record establishes that the impairment is medically determinable and severe and, pursuant to relevant regulations, the ALJ was required to assess the work-related limitations caused by the impairments in his RFC. (Doc. 15 at 4-5.)  Defendant maintains that Plaintiff's argument should be rejected for several reasons, including the fact that he did not raise obesity as an impairment that limited his functioning before the ALJ, and "the ALJ fully accounted for Plaintiff's functional limitations as demonstrated by the medical evidence, and in doing so, indirectly considered Plaintiff's obesity by evaluating and weighing the opinion evidence."  (Doc. 16 at 15, 19.)  I conclude Plaintiff has not shown that this claimed error is cause for remand.

"Because the outcome of a case depends on the demonstration of functional limitations, where an ALJ identifies at least one severe impairment and ultimately properly characterizes a claimant's symptoms and functional limitations, the failure to identify a condition as severe is deemed harmless error."  *Keys v. Colvin*, Civ. A. No. 3:14-CV-191, 2015 WL 1275367, at *11 (M.D. Pa. Mar. 19,

2015) (citing *Garcia v. Commissioner of Social Security*, 587 F.

App'x 367, 370 (9th Cir. 2014) (citing *Lewis v. Astrue*, 498 F.3d

909, 911 (9th Cir. 2007)); *Burnside v. Colvin*, Civ. A. No. 3:13-CV-

2554, 2015 WL 268791, at *13 (M.D. Pa. Jan. 21, 2015); *Lambert v.

Astrue*, Civ. A. No. 08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb.

19, 2009)).   Thus, when a plaintiff claims a step two error based

on an ALJ's failure to properly address an alleged impairment, the

crux of the analysis is whether the ALJ considered the associated

symptoms and functional limitations in his RFC analysis.   *See*,

*e.g.*, *Awad v. Colvin*, Civ. A. No. 3:14-CV-1054, 2015 WL 1811692, at

*13 (M.D. Pa. Apr. 21, 2015).   This principle applies to medical

problems which are documented and discussed by a plaintiff's

treating physician.   *Id.*

The *only* medical evidence cited by Plaintiff is the State

agency assessment by Dr. Bermudez and a statement made by

Plaintiff's primary care physician on the same date as his notes

indicate he counseled Plaintiff about his obesity.[5]   (Doc. 15 at

6.)

Although Plaintiff is correct that Dr. Bermudez assessed

obesity to be a severe impairment, his evaluation contained no

discussion of the impairment and identified no related functional

---

[5]   In Plaintiff's Reply Brief, he provides several citations
to the record where his BMI was in the obese range.   (Doc. 17 at 1
n.1.)   He does not cite to any additional discussion of obesity or
associated limitations.

limitations.  (*See* R. 108-12.)  This mere mention of obesity does not support harmful step two error because no associated functional limitations were identified or inferred.

Plaintiff acknowledges that his primary care physician did not provide detailed functional limitations, but he asserts that Dr. Rolston's statement that Plaintiff could technically work "[a] desk job for instance" is "the one unambiguous limitation expressed [that Plaintiff] would be limited to sedentary work."  (Doc. 15 at 9 (citing R. 396).)  Dr. Rolston's statement does not support Plaintiff's claimed step two error for several reasons: Dr. Rolston merely notes "counseling given" regarding Plaintiff's obesity based on his BMI of 30 to 34, he does not discuss obesity or weight-related issues; Dr. Rolston identified multiple medical problems and discussed many of them in some detail; in the context of his noted refusal to sign the disability form presented by Plaintiff, Dr. Rolston's comment that "technically he can work - do [a] desk job for instance" cannot be construed as either a statement related to Plaintiff's weight or an "unambiguous" limitation that Plaintiff could only do sedentary work.  (*See* R. 395-403.)

Thus, Plaintiff points to no medical evidence supporting or even suggesting limitations related to his obesity.  Plaintiff's reliance on limitations identified in his testimony such as falling, dizzy spells, being short-winded when climbing stairs, swelling in his feet, back pain while standing, and fatigue (Doc.

18

15 at 9-10 (citing R. 64, 67, 73, 78)) is similarly deficient.
Other than identifying his height and weight in response to a
question asked by the ALJ (R. 59), Plaintiff *never* mentions his
weight at the ALJ hearing.  (*See* R. 53-101.)   In his testimony,
Plaintiff identified the symptoms noted above and multiple medical
problems for which he was being treated, but he was unable to
correlate symptoms and conditions at the hearing (*see id.*) and does
not attempt to do so now by pointing to medical evidence
substantiating his allegations or correlating them to his weight.
Plaintiff's statement that the symptoms to which he testified "are
all reasonably exacerbated by his obesity" (Doc. 15 at 10), falls
far short of his burden of showing functional limitations related
to the claimed impairment.

     Plaintiff points to the guidance provided in SSR 02-1p
regarding the evaluation of obesity (Doc. 15 at 5-10; Doc. 17 at 2-
4), but he does not acknowledge certain important provisions,
including that the evaluator "*will not make assumptions* about the
severity of functional effects of obesity combined with other
impairments.  Obesity in combination with another impairment may or
may not increase the severity or functional limitations of the
other impairment.  We will evaluate each case *based on the
information in the case record*."  SSR 02-1p, 2002 WL 34686281, at
*6 (S.S.A. Sept. 12, 2002) (emphasis added).  Because this case
record is devoid of any discussion of problems related to

Plaintiff's obesity, it contains no evidence of functional limitations which the ALJ should have evaluated under SSR 02-1p. Further, SSR 02-1p guidance indicates that the ALJ should not have made the assumptions suggested by Plaintiff.  Therefore, taking as true Plaintiff's assertion that the ALJ must assess work-related limitations caused by the impairment in his RFC if the impairment is medically determinable and severe (Doc. 15 at 4 (citations omitted)), here the absence of evidence of work-related limitations caused or contributed to by obesity renders any claimed error harmless.

## B.    *Credibility*

While not argued as a discreet error, Plaintiff claims that the ALJ's credibility analysis is deficient because the ALJ did not take his work history into consideration.  (Doc. 15 at 10.) Defendant contends that substantial evidence supports the ALJ's credibility assessment.  (Doc. 16 at 20.)  I conclude Plaintiff has not shown that this claimed error is cause for remand.

The Third Circuit Court of Appeals has stated that "[w]e 'ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor.'"  *Coleman v. Commissioner of Social Security*, 440 F. App'x 252, 253 (3d Cir. 2012) (not precedential) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)).  "Credibility determinations are the province of the ALJ and should only be

disturbed on review if not supported by substantial evidence."
*Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *3 (E.D.
Pa. July 11, 2001) (citing *Van Horn v. Schwieker*, 717 F.2d 871, 873
(3d Cir. 1983)).  An ALJ is not required to specifically mention
relevant Social Security Rulings.  *See Holiday v. Barnhart*, 76 F.
App'x 479, 482 (3d Cir. 2003).  It is enough that the ALJ's
analysis by and large comports with relevant provisions.  *Id.*

As noted by Defendant, the ALJ thoroughly discussed
Plaintiff's credibility and set out valid bases for finding
Plaintiff only partially credible.  (Doc. 16 at 21.)  Defendant
correctly maintains there is no principle of law that compels an
ALJ to credit a plaintiff's subjective complaints when the
plaintiff has a strong work history and such a history "'is
insufficient to contravene an ALJ's credibility finding.'"  (*Id.* at
21-22 (quoting *Cooper v. Astrue*, 2011 WL 6742500, at *7 (E.D. Va.
Dec. 22, 2011)) (other citations omitted).)  Because work history
is the only basis upon which Plaintiff criticizes the ALJ's
credibility evaluation and he has not shown that the ALJ ran afoul
of any binding legal principle, this claimed error is not cause for
remand.

C.  *Residual Functional Capacity*

Plaintiff contends the ALJ erred in that he did not make any
findings regarding Plaintiff's ability to perform activities when
his obesity is considered.  (Doc. 15 at 12.)  As discussed in

21

conjunction with Plaintiff's first claimed error, the record is devoid of evidence of functional limitations related to Plaintiff's obesity.  Importantly, functional limitations, not labels or unsubstantiated claims, are what an ALJ must consider in determining whether a claimant is disabled.  Plaintiff points to no evidence linking his obesity, alone or in combination with other impairments, to functional limitations.  Therefore, for the reasons discussed above, Plaintiff has not shown that the ALJ erred on the basis alleged.

## V. Conclusion

Because Plaintiff has failed to show that any of the claimed errors are cause for reversal or remand, his appeal of the Acting Commissioner's denial of benefits (Doc. 1) is properly denied.  An appropriate Order is filed simultaneously with this Memorandum.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge


DATED: March 3, 2016